### THE W. H. GILBERT.

#### (Circuit Court of Appeals, Sixth Circuit. April 12, 1916.)

#### No. 2751.

COLLISION ⊕═71(2)—MOVING AND ANCHORED VESSELS—FOG.

    A steamer with a tow passing down the St. Clair river in the early morning in a dense fog *held* in fault for a collision with a vessel anchored so as to leave a clear channel of 1,000 feet on the American side, and which was continuously sounding a fog bell, on the ground that she failed to maintain an efficient and attentive lookout.

    [Ed. Note.—For other cases, see Collision, Cent. Dig. § 101; Dec. Dig. ⊕═71(2).]

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Ohio; John H. Clarke, Judge.

Suit in admiralty for collision by G. A. Garretson and S. P. Shane, receivers of the Gilchrist Transportation Company, against the steamer W. H. Gilbert; the Pittsburgh Steamship Company, claimant. Decree for libelants (211 Fed. 754), and claimant appeals. Affirmed.

    This is a libel in admiralty brought by Garretson and Shane, Receivers of the Gilchrist Transportation Co., the owner of the steamer City of Genoa, against the steamer W. H. Gilbert, for damages caused by the sinking of the Genoa in a collision occurring in the channel of the St. Clair River, at a point between Sarnia, on the Canadian side, and Port Huron, on the American side, alleged to have been caused solely by fault in the navigation of the Gilbert. The Pittsburgh Steamship Co., owner of the Gilbert, answered the libel as claimant, denying that the collision was due to the fault of the Gilbert, alleging that it was caused solely by the fault of the Genoa, and claiming damages to the Gilbert; but no cross libel was filed. The Boston Insurance Co. and other underwriters, insurers of the cargo of the Genoa, filed an intervening petition setting up their claim for damages thereto. It was stipulated that if the Gilbert should be held responsible for the collision, the Pittsburgh Steamship Co. was entitled to limit its liability for damages to the libelants and interveners to the sum of $53,375.03, with interest; that the damages to the libelants, as owners of the Genoa, amounted, including interest, to $33,639.06; and that the damages to the interveners, as insurers of the cargo of the Genoa, amounted, including interest, to $82,690.05.

    The trial judge found that the collision was caused solely by the fault of the Gilbert; and it was thereupon decreed that the libelants and intervening petitioners recover of the Pittsburgh Steamship Co., claimant of the Gilbert, the said sum of $53,375.03, with interest, amounting to $62,760.14,

─────────────

⊕═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

pro rata upon their respective claims; from which decree the Pittsburgh Steamship Co. has appealed to this court.

The opinion of Day, District Judge (211 Fed. 754), clearly states the case and his conclusions thereon.

Hoyt, Dustin, Kelley, McKeehan & Andrews, of Cleveland, Ohio (H. A. Kelley and G. W. Cottrell, both of Cleveland, Ohio, of counsel), for appellant.

A. J. Gilchrist and H. D. Goulder, both of Cleveland, Ohio, for appellees.

Before WARRINGTON and KNAPPEN, Circuit Judges, and SANFORD, District Judge.

SANFORD, District Judge, after making the foregoing statement of facts, delivered the opinion of the court:

It is conceded, at the outset, that as the damages to the insurers of the cargo of the Genoa, which largely exceeded the liability of the appellant, are, in the event of fault on the part of the Gilbert, a prior claim against that vessel, independently of the question of joint liability on the part of the Genoa, the only material question presented for review under this appeal is whether or not the trial court was in error in holding the collision to have been due to fault on the part of the Gilbert, regardless of whether there was also joint fault on the part of the Genoa.

On behalf of the appellant it is earnestly insisted that the evidence discloses no fault whatever in the navigation of the Gilbert, and that as to her the collision was due to inevitable accident or inscrutable fault.

A part of the testimony in the court below was taken by deposition. However, by far the greater portion was taken orally in the presence of the court; the witnesses testifying in open court, including, among others, five of the crew of the Gilbert, two of the crew of her barge and three of the crew of the Genoa.

Without determining whether the evidence sustains the conclusion of the trial judge that the Gilbert was at fault in the manner in which her course was shaped across the river in the fog at the time of the collision, causing her to over-run her expected turning place and collide with the Genoa, we are of opinion that it does sustain his conclusion that the Gilbert was in fault in failing to maintain an efficient and attentive lookout, whereby the fog bell of the Genoa might have been heard and the collision avoided.

Proceeding, as the Gilbert was, in a fog, encumbered by a tow, down the navigable channel of a much traveled river, the maintenance of an efficient and attentive lookout was imperatively required.

The undisputed testimony shows that the fog bell of the Genoa, which was of the standard size, was rung continuously from the time of her anchorage until the collision, at intervals of not exceeding two minutes, as required by law. This was shown by the testimony of the captain and three other members of the crew of the Genoa, and by four shore witnesses located at various points in Sarnia, all of whom testified, in substance, to the continuous ringing of this bell at regular

intervals. It was also heard by the mate of the tug Fischer, which came down the river from one-half to three-quarters of a mile ahead of the Gilbert. He first heard this fog bell when about two hundred feet from the docks just above Butler Street, in Port Huron, on the American side, that is, about five-eighths of a mile above the place of collision, and thereafter heard the bell continuously ringing as the tug passed down the river on the American side. It was also heard by the captain and mate of the steamer Lakeland, which came down the river ahead of the Gilbert, but on account of the fog rounded to and turned back up the river at or a little above Butler Street. Her captain heard the Genoa's fog bell when down near Butler Street; and the mate heard it both when making the turn there and also in going up the river afterwards.

According to the Gilbert's captain, she entered the fog at Butler Street at 4:35 and the collision took place at 4:40. During the five minutes that had elapsed, in which the Gilbert had traveled more than half a mile, the fog bell of the Genoa must have rung at least twice. It was not, however, heard on either of these occasions by any one on the Gilbert; neither by her captain, who was on the pilot house attending to the steering of the boat and the time at which he should make his turn; the wheelsman, who was on the pilot house giving attention to his course; the mate, who was on the pilot house with the captain and wheelsman, and states that he was merely standing as a lookout, as the captain had charge of the boat; nor the watchman, who was stationed as a lookout on the forecastle deck. This watchman was then nineteen years of age. He had been a watchman on the lake for only one year, and was then sailing his second season. He states, generally, that he was giving his entire attention to looking ahead and listening, and was standing a good lookout; but admits on cross-examination that he was not expecting to hear any bell, or anything in particular, and that if the Lakeland heard the fog bell of the Genoa over on the Port Huron side, it would have been natural that he should have heard it, and that he can not think of any explanation why he did not hear it.

It is true that the fog bell of the Genoa was located on the after side of the foremast, only eight feet above the deck, and behind her texas and pilot house, which extended five feet above the bell. While, however, this location would to a certain extent obstruct the sound of the bell in front of the vessel, we are of opinion that its location does not satisfactorily explain the failure on the part of the Gilbert to hear its ringing. Not only does the evidence fail to affirmatively disclose that the width of the forward deck houses of the Genoa were such as to interpose any obstruction to the sound of the bell in the direction from which the Gilbert was approaching, but the fact that the fog bell could be heard by a vessel approaching from this direction is demonstrated by the fact that it was in fact heard by the captain and mate of the Lakeland, while making a turn at Butler Street, at practically the same point as that at which the Gilbert entered the fog and in practically the same direction from the Genoa as that from which the Gilbert was approaching. The mate of the Fischer also

heard this fog bell ringing when he was abreast of Butler Street; although the course of the Fischer at that time was probably nearer the American shore than that afterwards taken by the Gilbert. Neither can the failure of the Gilbert to hear the Genoa's bell be satisfactorily explained on the supposition that the stern of the Genoa had swung towards the Canadian shore so as to bring her forward deck houses between the Gilbert and the location of the bell. There is no evidence whatever that the current would cause her to swing to any substantial extent; nor of any wind that would cause her thus to shift; and no evidence whatever that there was in fact any material change in her position after she had once settled down. Furthermore, the angle of incidence at which she was struck by the Gilbert, namely, about four points, or forty-five degrees, when taken in connection with the general location and the bend in the river at Sarnia, clearly shows that the Genoa was lying at the time of the collision in substantially the same position as that in which she had come to rest, that is, tailing down the stream about parallel to the dock. Nor is there anything, other than mere conjecture, to support the theory that the failure of the Gilbert to hear the bell may have been due to synchronism of sound, caused by coincidence between the ringing of the Genoa's fog bell and the sounding of the whistle which was being blown at intervals of one minute on the Gilbert; there being no evidence whatever as to this matter. There is likewise no evidence whatever to support the theory of supposed areas of inaudibility, due to atmospheric conditions, preventing the Gilbert from hearing the Genoa's bell.

The trial judge, who heard the testimony of the watchman on the Gilbert and the other members of its crew and had an opportunity to observe their appearance and demeanor, was of opinion that the watchman was young and inexperienced; that if he had properly listened for signals this accident would not have happened; and that the only reason that the fog bell of the Genoa was not heard upon the Gilbert was the inefficiency or inattention of the lookout maintained by it.

After careful consideration of all the evidence, we are of opinion that this conclusion was correct. Furthermore, independently of this conclusion on our part, we should be constrained to reach the same result, under the well settled principle in appeals in admiralty, that where the trial judge has heard the witnesses and had an opportunity of weighing their intelligence and candor, the decree of the district court will not be reversed upon questions of fact depending upon conflicting evidence, unless there is a decided preponderance against the decree. City of Cleveland v. Chisholm (6th Cir.), 90 Fed. 431, 434, 33 C. C. A. 157, and citations. This conclusion renders unnecessary a detailed consideration of the several assignments of error relied on by the appellant. And for the reasons above stated, it appearing that the Gilbert was in fault in failing to maintain a sufficient and proper lookout, whereby the fog bell of the Genoa might have been heard and the collision avoided, the decree below will be affirmed, with costs.